(13 Misc. Rep. 537.)

PEOPLE ex rel. MUCKLE v. BOARD OF EXCISE OF TOWN OF BRUNS-
WICK.

(Rensselaer County Court. July, 1895.)

1. INTOXICATING LIQUORS—LOCAL OPTION—SUBMISSION TO TOWN MEETING.

Under Laws 1893, c. 82, § 41, which amends the town law by providing that any elector may suggest any proposition to be voted on at a town meeting which is not required to be voted on by ballot, a proposition for local prohibition may be submitted to a town vote; and therefore there is no necessity for submitting such question to the voters of a town by the selection of "no-license commissioners."

2. SAME—ELECTION OF "NO-LICENSE COMMISSIONERS."

Under Laws 1892, c. 401 (Excise Law), § 41, providing that the act, which authorizes the election of excise commissioners to pass on applications for liquor licenses, shall not apply to any town "where the majority of voters had voted for * * * local prohibition," no commissioners can be elected where a town has voted for local prohibition, as provided by Laws 1893, c. 82, § 41, and therefore, where there has been no such vote for local prohibition, but excise commissioners have been elected in the town, they cannot refuse to grant licenses on the ground that they were elected for the purpose of refusing all applications for licenses.

Certiorari by Thomas Muckle to review the determination of the board of excise of the town of Brunswick denying relator's application for a license to sell liquor.

Henry J. McCormick and William J. Roche, for relator.
Calvin E. Keach, for defendants.

GRIFFITH, J. The question presented for determination is, did the board of excise for the town of Brunswick arbitrarily deny, or deny without good and valid, reasons therefor, the application of Thomas Muckle for a hotel license, permitting the sale of strong and spirituous liquors, wine, ale, or beer, to be drunk on or off the licensed premises? The writ of certiorari requires the board of excise to return a transcript of the proceedings had before them, and the statement of the other matters specified in, and required by, the writ. The paper filed May 28, 1895, and indorsed, "An Answer to Writ of Certiorari," was intended, no doubt, by William H. Link and Sanford Clum, as a return to the writ, but in fact only controverts the allegations of the petition, and alleges facts in explanation of the commissioners' action, and other matters not called for by the writ. The amended return, made pursuant to an order of this court, and filed June 12th, must be regarded as the return which is to be considered on this hearing. People v. Ryken, 6 Hun, 626; Stone v. Mayor, 25 Wend. 157; People v. Vermilyea, 7 Cow. 137; People v. Mayor, etc., of New York, 2 Hill, 11. Annexed to the return are the papers filed with the board by the relator upon his application for a license, and the same are in proper form, and fill all the requirements of the statute. Laws 1892, c. 401, § 20. The return discloses the following proceedings had by the board upon the receipt of the relator's application for a license:

"An application from Thomas Muckle for a license to keep an inn, tavern, or hotel on the Troy and Pittstown turnpike, about three-quarters of a mile

from the Troy city line, and known as the 'Brookside Hotel.' The board of excise commissioners refuse to grant a license to Thomas Muckle, for the following reasons: We, the majority of the board of excise of the town of Brunswick, in conference this 6th day of May, have come to the conclusion, to wit: That we were nominated and elected as no-license commissioners, and that a majority of the voters of the town of Brunswick, at the last two annual town meetings therein, have practically expressed, by their votes for commissioners of excise, their opposition to the granting of any license; that there is no public necessity for granting such license; that granting such license would be injurious to the welfare of the public; that, from all the facts and circumstances of the case, this board, in the exercise of its discretion, will refuse to grant this license.                    William Link.
                                                                    "Sanford Clum.
"Sherman Smith not voting."

The return further shows that the same action was had upon all the applications for license presented to the board, and that no licenses were granted; that thereafter the said William H. Link and Sanford Clum did file in the office of the board a statement of their reasons for refusing to grant the licenses applied for, which reasons were the same as above given.

There is no ambiguity in the return. It is plain that the commissioners intended to, and did, reject all applications for licenses in the town of Brunswick, and the indefiniteness of the return suggested by Judge Herrick in People v. Bennett, 4 Misc. Rep. 10, 23 N. Y. Supp. 695, does not exist in this case. The board of excise of the town of Brunswick have, by their action, attempted to establish local prohibition in that town. In my opinion, the board has no such power, in law. By chapter 300, Laws 1845, electors of the several towns and cities of this state were authorized to determine by ballot whether the members of the board of excise in their respective towns and cities shall or shall not grant licenses for the selling of intoxicating liquors, and, in case the majority of the voters should vote in favor of "no license," then the board of excise to be prohibited from granting any licenses. This act was repealed by chapter 274, Laws 1847. My attention has not been directed to any statute on the subject of local prohibition from the above repeal until the enactment of section 6, c. 549, Laws 1873, as amended by chapter 401, Laws 1892, section 41 of which provides:

"Nothing herein, except section 31, shall in any manner apply to any town where the majority of voters have voted for or hereafter vote for local prohibition until such town shall reverse by vote such local prohibition."

A fair construction of section 41 would be that whenever any town, by a majority of voters, have voted for local prohibition, the provisions of the excise law shall not apply to that town, except that, if intoxicating liquors are sold, the persons selling shall be guilty of a misdemeanor. Counsel for the defendants contends that the only way to submit the question of local prohibition to the voters of a town is by the selection of "no-license commissioners." In this he is mistaken. Section 41 of chapter 82 of the Laws of 1893, which is an amendment to the "town law," provides that any elector of a town may, by written application filed with the town clerk at least 10 days before the town meeting, suggest any proposition to be submitted to and voted upon by the electors of a town at any town

meeting which is not required to be voted upon by ballot. The town clerk shall give notice of the proposition to be so voted for by publishing the same, at least one week before the town meeting, in a newspaper published in the town, if any is published therein; and such notice shall also be published for the same length of time at the place where the poll of the town meeting is to be held, in each election district, and shall be publicly read by the inspectors to the voters present before any such vote is taken. The vote shall be taken by a division of the electors present and voting thereon, and the inspectors shall count the number so voting in favor of such proposition, and the number so voting against the same, and shall enter into the statement of the result of the town meeting held in such district a statement of the proposition so voted upon, and the number of votes so cast in favor of and against the same, and certify with the statement that they are required to certify and return to the justice of the peace and the town clerk. Sections 32–34, art. 2, c. 569, Laws 1890, define the business of the towns which require a vote of the people by ballot. What, then, is to prevent an elector of a town from filing with the town clerk a written application for the submission of a proposition to be voted on by the electors of a town at a town meeting, upon the question of local prohibition? The procedure in such cases is made very simple, and the statutes amply provide for the submission of such a proposition to be voted directly on by the people of a town. Such must have been the views of the lawmaking powers in enacting the language of section 41 of the excise law (Laws 1892, c. 401):

"Nothing herein, except section 31, shall in any manner apply to any town where a majority of voters have voted for or hereafter vote for local prohibition; until such town shall reverse by vote such local prohibition."

This clearly intends that the vote for local prohibition shall be the direct expression of a majority of voters; for, if it was intended otherwise, the legislature would have re-enacted chapter 300 of the Laws of 1845, which permitted the electors of the several towns to determine by ballot whether there should or should not be licenses granted by boards of excise. If a proposition for local prohibition is adopted by a majority of the voters at a town meeting, the effect would be that all the provisions of the excise law, except section 31, would not apply to that town, and thereafter there would be no authority in law for the election of excise commissioners in such town. If a majority of the voters of the town of Brunswick favor local prohibition, they must so declare by submitting that proposition to the electors of the town, and not pursue the hollow mockery of electing excise commissioners who do not intend to perform an official function, beyond drawing their pay. It is hardly necessary to multiply words to establish the truth of this proposition. Why should there be excise commissioners in a town where a majority of voters have determined that there shall be no licenses? Section 41 of the excise law must be observed and followed as strictly as any other provision of law. And where a majority of voters have not voted for local prohibition, submitted to them as such, then excise commissioners must be elected in that town, and when they

shall have been elected and qualified the law requires them to perform duty. There can be no doubt upon this last proposition, for, if the provisions of the excise law are carefully examined, it will be seen that section 20 provides that a party applying for a license must present a written or printed application, signed and sworn, requiring the applicant to furnish the excise board with certain information; also, a bond in the penal sum of $250. Section 21 provides:

"If the board approves the bond presented with such application, both as to its form and as to the sufficiency of the sureties therein, and if the board is satisfied that such application is true and that each such applicant may lawfully be licensed to carry on the business sought to be licensed, the board may grant to the applicant therefor one or more of the kinds of licenses specified in that act."

Section 7 requires the excise commissioners to take and file the constitutional oath of office, the language of which requires a faithful performance, rather than a nonperformance, of duty; and the same section requires that every commissioner of excise shall make and file a bond, in a penalty to be fixed by the supervisor of the town, at a sum not less than double the sum collected in such town for excise licenses in the next preceding year, and at least for $1,000, conditioned that the commissioner shall faithfully perform all duties of his office, etc. Thus it seems clear and indisputable that excise commissioners have a duty to perform, and cannot avoid a faithful performance of that duty by reason of individual opinion, or conscientious or religious scruples. The law never contemplated that commissioners of excise should perform legislative functions, or that after their election, and acceptance of office, they should say, "We have been elected to do nothing." Commissioners of excise were not created by the legislature either to grant all licenses applied for, or to reject all licenses applied for, but, among other things, to hear and consider, and lawfully adjudicate upon, such applications as might be made for licenses; acting in each case upon its merits, as dissociated from the merits of other cases. The powers of the boards over this subject are judicial, and not legislative. It is, no doubt, entirely competent for a board of excise to deny an application for a license for a particular house or building, on the ground that a hotel is not necessary at that point, because there is a sufficient number of licensed places in the vicinity, or in the town, or because, for some other good reason, it is not needed, or ought not to exist. While the applicant may not be entitled to a license as a matter of right, he is, as a matter of right, entitled to a lawful disposition of his application upon its merits. People v. Board of Com'rs of Excise, 4 Misc. Rep. 336, 25 N. Y. Supp. 322; Martin v. Symonds, 4 Misc. Rep. 8, 23 N. Y. Supp. 689. The idea seems to be prevalent among some good people, and particularly among commissioners of excise, that boards of excise may be elected to grant no licenses, for the reason that they were avowed no-license men before election, and, in accepting the office, they have no duty to perform. Such is not the case, as the law contemplates. Excise commissioners are elected to grant licenses. That is their duty. McNaughton v. Board, 5 Misc. Rep. 457, 26 N. Y. Supp. 229. I feel

strongly fortified in this position by section 24 of the excise law, which provides that the action of boards of excise may be reviewed by writ of certiorari, and if the court shall, upon the hearing, determine that such application for a license has been by such board arbitrarily denied, or denied without good and valid reason therefor, such court may make an order commanding such board of excise to grant such application, and issue a license to such applicant, upon the payment of the proper license fee. If the commissioners of excise were to be vested with absolute authority in the matter of granting licenses, then the power to review and revise their actions in the premises would never have been given the courts by the writ of certiorari provided for by section 24. Boards of excise may be commanded, by order of the courts, to issue licenses, where they have arbitrarily denied, or denied without good and valid reason, an application for a license; and the question of what ticket the commissioners were elected upon is not to be considered. The case of People ex rel. Wood v. Board of Com'rs, 75 Hun, 224, 27 N. Y. Supp. 41, has been cited by the counsel for the defendants to sustain their action. I am not unmindful of the maxim, "Stare decisis, et non quieta movere," and willingly adhere to decided cases with most respectful deference; but in the Wood Case the learned judge who wrote the opinion did not have his attention directed to the special provisions of the town law, and especially the amendments of chapter 82, Laws 1893. I feel almost certain that, if the provisions of the town law had been considered by the court in deciding the Wood Case, the custom of electing "no-license commissioners" would not be pointed out as the only mode by which a majority of voters of any town can vote for local prohibition. Every town should be governed in the manner expressed by the will of the majority of the electors, but that will must be expressed in a manner pointed out by the statutes. Suppose a lawyer who was a communicant of the Roman Catholic Church was elected to the office of justice of the supreme court, and after he had qualified, and entered upon the discharge of his duties, an action for a divorce a vinculo matrimonii was brought on for trial before him, and the plaintiff proved by good and sufficient evidence all the material allegations in a proper complaint, and no defense was interposed, and the court was satisfied that there was neither fraud nor collusion, but rendered judgment against the plaintiff upon the grounds and for the reason that he had conscientious and religious scruples against granting divorces, and that his views on that subject were well known to the electors of the district before his election, and therefore, by his election, he was empowered to legislate, rather than adjudicate, upon such questions. If an appeal was taken from such a judgment, how much of an argument would it require to have the court in banc reverse the overscrupulous judge, and order judgment for the plaintiff on the merits? The same principle is raised in the case at bar. The defendants claim to be opposed to the sale of intoxicants, and their views thereon were known to the electors of the town, and for that reason refuse to consider applications for licenses in a manner contemplated by the statute, but

base their action on the ground: "Our views on the license question were well known to the electors, and, if a majority did not indorse such views, we would not have been elected." However much I respect the learning, ability, and integrity of the judges who rendered the decision in the Wood Case, I feel that I must follow the statute, and its plain provisions, rather than their interpretations thereof. In my position I am sustained, not only by the statutes, but by the opinions of Justices A. B. Parker and S. A. Kellogg, of the supreme court, and Judge D. Rider Cady, of Columbia county.

The action of the board of excise of the town of Brunswick in arbitrarily rejecting the application of the relator was based on a misapprehension of the law, amounting to legal error, which is properly reviewable by the court under the writ of certiorari. I do not wish to pass upon the merits of the several applications for licenses in the town of Brunswick, and believe that should be done by the commissioners of excise selected by the electors of that town; and as it appears from the return that said board did not consider the application of the relator upon the merits, as it was their duty to do, I send the matter to them for their consideration and determination upon the merits. The relator shall have his costs of the proceedings, to be allowed and fixed. Ordered accordingly.